UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                  Case Number 91-81019

v.                                                   Honorable David M. Lawson

DONALD DAVENPORT,

        Defendant.

_____/

## ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE

Defendant Donald Davenport has filed a motion, later supplemented by counsel, asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239.  Davenport has served approximately 29 years of a 57.5-year prison sentence for multiple armed bank robbery and firearm offense.  He argues that a sentence reduction is justified by his age (65 years old) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting.  The government opposes the motion, maintaining that Davenport would be a threat to public safety if he were set free.  Although the defendant's age qualifies as an extraordinary and compelling reason for release during this global pandemic, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release.  Because Davenport has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motions will be denied.

I.

On March 27, 1992, a federal jury convicted Davenport of three counts of armed robbery, three counts of conspiracy to commit armed bank robbery, and three counts of carrying a firearm during and in relation to a crime of violence.  On July 22, 1992, the Honorable Avern Cohn

sentenced the defendant to a total of 57.5 years imprisonment: concurrent terms of 12.5 years on the robbery counts, five-year concurrent terms on the conspiracy counts, five years to run consecutively on the first firearm-carrying count under 18 U.S.C. § 924(c), and 20 years to run consecutively on each of the two remaining 924(c) counts. His convictions were affirmed on appeal. *United States v. Hester*, 21 F.3d 428 (6th Cir. 1994) (Table).

Davenport frequently challenged his convictions and sentences to no avail. Most recently, with the permission of the court of appeals, he filed a motion for leave to file a successive motion to vacate his sentence under 28 U.S.C. § 2255, which remains pending.

The defendant presently is confined at Terre Haute USP, a high-security facility in Indiana that houses about 1,180 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on August 5, 2041. Davenport in 65 years old.

On March 19, 2020, the defendant sent the Warden of Terre Haute USP a request for compassionate release based on the provisions of the First Step Act that eliminates the section 924(c) sentence stacking mandate and the emergence of COVID-19 at his facility. The warden denied that request the following month. On March 19, 2020, Davenport filed a *pro se* motion for compassionate release, which the Court received on April 20, 2020. The Court then appointed counsel for the defendant, who filed a supplemental brief supporting the defendant's motion on October 23, 2020. On January 7, 2021, the government filed a notice of supplemental authority, which it amended, after obtaining leave from the Court. The defendant followed suit and filed a second supplement to his compassionate release motion on February 5, 2021.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates or staff at Terre Haute USP. In addition, 723 inmates and 19 staff members previously were diagnosed and now have recovered. Reports indicate that two inmates have died

from the virus. *See* https://www.bop.gov/coronavirus/. The BOP also reports that it fully inoculated 268 staff members and 840 inmates at the Terre Haute FCC. *Ibid.* It is unclear whether the defendant has been vaccinated.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Gilmore relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the

factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However,

the defendant still must satisfy the other two requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Davenport argues his age of 65 years renders him vulnerable to complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *Jones*, 980 F.3d at 1102 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society

for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions and older individuals face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Ctrs. for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). It is appropriate to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 984 F.3d at 521.

Here, Davenport's age, in combination with the risks posed by the coronavirus pandemic, renders him eligible for compassionate release. Although the "CDC has removed the specific age threshold from the older adult classification," it maintains that the risk of severe complications from contracting the virus "increases steadily" as people age and those who are 65 years or older are particularly susceptible. *CDC Updates, Expands List of People at Risk of Severe COVID-19 Illness*, Ctrs. for Disease Control & Prevention (June 25, 2020), https://bit.ly/3vu7Dm8; *Older*

*Adults*, Ctrs. for Disease Control & Prevention (Feb. 26, 2021), https://bit.ly/3tlnqBZ (observing that "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years and older."). Although Davenport does not cite any underlying medical conditions that may further increase his risk of severe COVID-19-related complications, he need not do so. His advanced age in combination with the ongoing pandemic constitutes an extraordinary and compelling reason for his release.

The government argues otherwise, contending that the compassionate release statute and the Sentencing Commission's policy statement "require that a defendant be 'at least 70 years of age, [and] ha[ve] served at least 30 years in prison . . .' to be eligible." Response, ECF No. 309, PageID.197 (quoting 18 U.S.C. § 3582(c)(1)(A)(ii) and U.S.S.G. § 1B1.13(1)(B)). But Davenport does not rely on the compassionate release statute's age provision, section 3582(c)(1)(A)(ii); he relies on the section 3582(c)(1)(A)(i), which requires a showing of "extraordinary and compelling reasons." And the government concedes that the Sentencing Commission's policy statement does not apply to inmate-initiated requests for compassionate release under *Jones*, 980 F.3d at 1109, and *Elias*, 984 F.3d at 519-20.

Davenport also argues that Congress's non-retroactive reduction of the mandatory minimum sentence that applies to his firearm-related crimes, *see* First Step Act of 2018, § 403(a), Pub L. 115-391, 132 Stat. 5194, 5221-22, provides another extraordinary and compelling reason for his release. However, the Court need not address that argument since Davenport's age coupled with the COVID-19 pandemic satisfy this element of his claim.

C.

Even if the defendant has made a satisfactory showing of extraordinary and compelling circumstances, early release is not justified in this case because the relevant section 3553(a) factors

weigh heavily against discharging him into the community. The government has abandoned its argument that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, which was based on one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument, it acknowledges, is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."); *Elias*, 984 F.3d at 519-20 (same).

But that is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Davenport's crimes, which are violent in nature, are serious. When he was 37 years old, Davenport participated in three bank robberies over the course of two weeks where at least one of the perpetrators carried a firearm and threatened to kill several bank tellers. *Hester*, 21 F.3d 428. Thankfully, no one was harmed. Moreover, Davenport's criminal history is troubling. In 1974, he was convicted of assault and battery, attempted burglary, and attempted larceny in a building when he was 19 years old. The following year, he was sentenced to three-to-five years in prison for attempted uttering and publishing. In 1978, he committed credit card fraud. Four years later,

he committed an armed robbery for which he received a sentence of 9-to-20 years in prison. While on parole for only six months, Davenport committed the three bank robberies for which he is currently incarcerated.

If sentenced today, Davenport would face only 60 months imprisonment on each consecutive 924(c) count, which would reduce his prison sentence to a minimum of 300 months or 27.5 years. Davenport has served almost 29 years. But despite the mandatory nature of the sentence when it was imposed, a substantial prison term was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). And one of those goals — protection of the public — is paramount in this case. Davenport was a repeat bank robber who steadfastly refused to change his behavior in spite of substantial prior prison sentences and the assistance of supervisory officers who were dedicated to his rehabilitation. That intransigence left no alternative than isolation to protect the public.

Since his incarceration in 1992, Davenport received about 25 disciplinary infractions. His first citation, in 1995, resulted from his participation in a prison riot. Davenport contends that he did not participate in the riot, and that all prisoners in his unit received the same citation "regardless of [their] involvement due to the 1995 Crack riots that went on throughout the prisons in response to the crack/power disparity." Reply, ECF No. 323, PageID.283. His disciplinary record also shows that he forged a document, set a fire (allegedly caused by improperly discarding a cigarette), threatened bodily harm, and fought with another inmate. Although Davenport has maintained a clear record for the past two years, he received his citations for fighting and threatening bodily harm within the past five years. Davenport's willingness to educate himself and serve as a prison librarian is commendable. But he cannot escape his history, which reveals consistent involvement in violent crime and an inability to follow the terms of supervision, even as he matured.

It cannot be said convincingly that Judge Cohn's sentence was greater than necessary to achieve congressional goals. Based on Davenport's current release date of July 8, 2041, he has served just about half of his sentence. Releasing Davenport now would not promote respect for the law, and it may undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who has demonstrated his disinclination to abide by society's rules of conduct.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs against granting any reduction in sentence, and those factors foreclose relief. The defendant's age likely increases his risk of developing severe of complications if he were to contract COVID-19. But his conduct both leading to his indictment and afterward in prison cast significant doubt on his willingness to be law abiding. On similar facts, federal courts have denied compassionate release motions by defendants who were convicted of serious crimes, notwithstanding an inmate's demonstration of elevated medical risk. *E.g.*, *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020) ("Given the gravity of Benge's drug offense and that he has only served a fraction of his 240-month sentence, release is not appropriate. Further, Benge's drug trafficking offense suggests that he poses a continued danger to the safety of the community.").

### III.

Davenport has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 303, 308) are **DENIED**.

                                                        s/David M. Lawson
                                                        DAVID M. LAWSON
                                                        United States District Judge

Dated: April 8, 2021